Atkinson, J.,
delivered the opinion of the court:
This is the claim of a substitute letter carrier for extra pay under the act of May 24, 1888 (1 Supp. R. S., 587), for services alleged to have been performed in excess of eight hours per day at the post-office at Chicago, Ill., prior to the year 1900.
About 400 similar claims of substitute carriers at the same post-office, identical in all respects except only as to the amount involved, have been filed in this court and will be controlled by the decision of this cause. This is, therefore, *40 in the nature of a test case, and is before us upon the petition and an agreed statement of fact which presents all the questions of law involved in all the cases.
In August, 1893, the plaintiff Alderman was appointed a substitute letter carrier in the post-office at Chicago, Ill., and served as such for a period of about three years under authority of the Postmaster-General and the postmaster of that city.
In the petition it is alleged that under the laws of Congress the plaintiff is entitled to be paid for time in excess of eight hours per day as such substitute letter carrier.
For the recovery of the excess of time alleged to have been served by him over and above the eight hours required of regular letter carriers in the postal service, this suit is brought.
Two points are involved in the controversy before us:
1. Are substitute letter carriers included in, or embraced by, the eight hour per day law governing regular letter carriers in the mail service ?
2. Are substitute letter carriers employed on the eight-hour basis, or can they, under their employment, be required to work in excess of eight hours per day without being paid extra for such excess of time?
The employment of substitute letter carriers was first authorized by the act of August 2, 1882 (1 Supp. E. S., 363), as follows:
“ That the Postmaster-General be, and he is hereby, authorized to appoint one or more substitute letter carriers, whose compensation shall be one dollar per annum and the pro rata compensation of the carriers whose routes they may be required to serve.”
The act of June 27, 1884 (1 Supp. R. S., 446) provided:
“ Be it enacted, eic., That all letter carriers at free-delivery offices shall be entitled to leave of absence, not to exceed fifteen days in each year, without loss of pay; and the Postmaster-General is hereby authorized .to employ, when necessary, during the time such leave of absence is granted, such number of substitute letter carriers as may be deemed advisable, who shall be paid for services rendered at the rate of six hundred dollars per annum.”
*41 Next came the “ eight-hour act ” lor letter carriers, upon which the present claim is based. It is as follows (act of May 24, 1888, 1 Supp. K,. S., 587) :
“AN -ACT To limit the hours that letter carriers in cities shall be employed per day.
. “ Be it enacted, etc., That hereafter eight hours shall constitute a day’s work for letter carriers in cities or postal districts connected therewith, for which they shall receive the same pay as is now paid as for a day’s work of a greater number of hours. If any letter carrier is employed a greater number of hours per day than eight he shall be paid extra for the same in proportion to the salary now fixed by law.”
While it is true, as stated by plaintiffs’ learned counsel, the court has upon the report of the commissioner, without opposition on the part of the attorneys for the Government, allowed the claims of a few substitute letter carriers for extra hours of service, yet we do not agree with him in his contention that the rule of stare deeicis can apply, for the reason that this is the first case that has been brought before the' court in which a construction of the statutes involved as applied to substitute carriers has been invoked by the defendants.
The first question is, Are substitute letter carriers included in the act of May 24, 1888, sufra?
This statute in terms applies to letter carriers, and to no other class. A substitute is one tvho takes the place of another; and while it is true that a substitute letter carrier when on duty performs identically the same service as a letter carrier, yet under the postal service and postal regulations the two positions have always been kept separate and distinct by the Post-Office Department. A substitute carrier is a probationary official, who is held in reserve by postmasters to take the place of a regular carrier when he is necessarily absent from duty, and is expected to perform a probationary service, until by experience and training he becomes proficient and useful to the public service and is appointed to take the place of a regular carrier when a permanent vacancy occurs. The distinction between the two positions, therefore, is something more than a mere difference in grade.
*42 Moreover, the authority for the appointment of substitute letter carriers, the measure of their compensation, and their contract of employment differ materially from those of regular letter carriers. They are appointed under different acts of Congress, and the regulations of the postal service have invariably kept them in separate classes. The position of substitute letter carrier was first created under the act of August 2, 1882, supra, which act was supplemented by the act of June 27,1884, supra.
The number of regular letter carriers in the postal service is regulated by the demands of the public, and is restricted to towns and cities containing a stated population, and the power to increase or diminish their number is invested in the Postmaster-General. There is no restriction as to the number of substitute letter carriers the Postmaster-General is authorized to employ. Tegular letter carriers are paid stipulated salaries of $600, $800, and $1,000 per year, while substitute letter carriers are paid $1 per year and the pr'o rata pay of the absent regular carrier whose route they are required to serve. Furthermore, in all appropriations made by the Congress for the maintenance of the mail service of the United States since 1897, regular and substitute mail carriers have been kept separate.
The act of May 24, 1888, being in specific terms, does not apply to substitutes, unless we read into the act the words substitute letter carriers, and thus place them on an equal footing with, regular letter carriers; but the language of the act being unambiguous is not susceptible of construction and therefore excludes substitute carriers.
Under the regulations of the Post-Office Department, regular letter carriers are not allowed to remain on their respective routes for a longer period than eight hours per day. This regulation for years has been urgently and vigorously enforced; but such requirement has never been applied to substitute carriers. When a substitute takes the place of a regular carrier, he is expected to do the work of that carrier. Owing to the lack of experience and efficiency in the service, however, he usually requires more time to complete his work, but the Postmaster-General and the postmasters evidently never contemplated that a carrier, who was on probation for the purpose of equipping himself for the *43 public service, should or would expect or demand greater compensation for his time and service than an experienced man in the same service; and hence the department rule which was applied to a regular carrier to return his undelivered mail- to the post-office at the expiration of eight-hours’ service, was never applied to a substitute carrier. It is evident, we think, that any other rule than this would place a premium iqpon inefficiency, which would necessarily result disastrously to the mail service. If a regular carrier can and does perform his daily duties in eight hours, and a substitute takes his place and, because of his inefficiency, devotes ten hours to perform the same amount of work, it borders on the ridiculous to claim that he should receive two hours more pay for such service than his principal received for only eight hours’ work. It can not, therefore, be presumed that the Congress intended by the act under consideration to provide greater compensation to substitutes than to regular letter carriers for doing the same amount of work. Routes of carriers are arranged as the result of practical tests, and no carrier is assigned to do or perform an excessive amount of service. He is assigned to cover a certain amount of territory in the delivery of mail matter which the practical tests have shown he is able to do within the eight-hour limit, and he is not expected nor allowed to go beyond that limit. If, therefore, a substitute requires more time to perform the duties of his principal and receives the full amount of pay allowed his principal under the postal laws, can anyone justly claim that such substitute should receive a greater amount of compensation simply because he is less proficient as a carrier of mails ?
We can not conceive, therefore,, that the Congress ever intended any such extra time and pay should be allowed for such service. To illustrate further: Under the regulations of the Post-Office Department a regular letter carrier serves his route and returns within eight hours to the post-office and is entitled to receive, and does receive, his pro rata pay for such service. The next day he is prevented by sickness or by some other legitimate reason from discharging his duties as a letter carrier, and a substitute carrier is assigned by the postmaster to fill his place. The substitute, because of lack of experience or want of energy or activity, requires *44 ten hours to do identically the same work. The substitute is entitled to and is paid the full compensation allowed by law to the regular carrier, but because he used two hours more time to .do the work of the regular carrier, he claims that he is entitled to two hours extra pay from the Government for his services. Such contention, it seems to us, is not only inequitable, but it is in direct conflict with the act of August 2, 1882, supra, which expressly limits a substitute carrier’s compensation to $1 per year and the fro rata pay of the regular carrier whose route- he was assigned by the postmaster to serve. lienee, it is apparent that there is no provision of law under which the substitute carrier can be paid for the two hours extra time in excess of eight hours; and at the same time such claim is in direct violation of the statute which prescribes the pay of the substitute carrier. Looking at the case from this standpoint, we do not believe that the Congress intended to extend the “ eight-hour law ” to substitute letter carriers.
The second question is answered in the first, for if the act of May 24, 1888, does not apply to substitute letter carriers, as we hold it does not, then it is immaterial whether the substitute, in the performance of his duties, works in excess of eight hours per day, for if he does there is no provision of law by which he can be paid therefor. Under the act of his appointment, as before stated, he is only entitled to the fro rata pay of the carrier whose place he takes, and that is the full measure of his compensation.
The petition is dismissed.
Barney, J., was absent on account of illness when this case was tried and took no part in the decision thereof.